ARKANSAS SHORTLEAF LUMBER COMPANY v. WILKINSON.

Opinion delivered June 20, 1921.

1. MASTER AND SERVANT—INSTRUCTION AS TO MASTER'S DUTY.—In an action by a servant for a personal injury, alleged to be due to the master's negligence in failing to inspect lumber handled by the servant, an instruction that it was the master's duty to protect the servant from danger while in the performance of his duty, and that the master was liable if negligent in making inspection, provided such negligence was the proximate cause of the injury, was erroneous in ignoring the master's contention that it was the servant's duty to inspect the lumber.

2. MASTER AND SERVANT—FAILURE TO INSTRUCT.—Where, in an action by a ripsawyer for a personal injury, it was the master's contention that it was the duty of the plaintiff, and not of a fellow-servant, to inspect boards for defects for the purpose of protecting plaintiff, it was error to refuse an instruction which would have submitted this issue to the jury.

3. MASTER AND SERVANT—DUTY OF INSPECTION—INSTRUCTION.—In an action by a servant for personal injuries, where it was the duty of a fellow-servant to inspect lumber to see that the same was free from defects liable to injure plaintiff, and such fellow-servant was negligent in discharge of this duty, the master was liable.

4. MASTER AND SERVANT—LIABILITY OF CORPORATE EMPLOYER—IN-STRUCTION.—In a servant's action against a master for personal injuries, an instruction as to the liability of a corporate employer which is a literal copy of Crawford & Moses' Digest, § 7144, though abstractly correct, is erroneous and misleading when given without hypothetical statements showing how it would be applicable to the facts in the case; being tantamount to a peremptory instruction for plaintiff and in conflict with other instructions.

5. MASTER AND SERVANT — ASSUMED RISK.—An instruction that a servant assumes only known risks, the danger of which is comprehended by him was erroneous where it ignored the issues (1) whether the injury was due to the servant's failure to perform his duty of inspection, in which case he assumed the risk whether he knew of the danger resulting from his failure to perform such duty or not, and (2) whether he assumed the risk of the injury complained of because it was obvious.

6. MASTER AND SERVANT—BURDEN OF PROOF—INSTRUCTION.—In an action by a ripsawyer for injury to his eye struck by a splinter from defective lumber, an instruction was erroneous which placed on the defendant the burden of showing that the plaintiff knew and appreciated the danger; it being proved that he was an experienced employee of mature years.

7. MASTER AND SERVANT—ASSUMED RISK.—If a ripsawyer, injured by a splinter from a defective board, knew that the board was defective, or if the board was so obviously defective that a man of ordinary care must have known it, he assumed the risk, even if a fellow-servant neglected his duty to inspect the board.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; reversed.

*Mike Danaher* and *Palmer Danaher,* for appellant.

1.    There was misconduct of counsel for plaintiff in examining veniremen. The statements made were not true, and were prejudicial and resulted in an excessive verdict. 104 Ark. 1, 9; 38 Cyc. 1479.

2.    There was also misconduct of counsel for appellee in his opening statement to the jury which constituted reversible error. 81 Ark. 231. Counsel have no right to introduce matters foreign to the issues before the jury. 38 Cyc. 1500; 43 A. L. R. 146, 451; 41 N. H. 325; 9 Am. St. Rep. 560.

3.    It was error to admit testimony as to mental an-

guish of plaintiff and as to appellee's family. Such testimony was not admissible. 54 Ark. 354. Mental suffering cannot be proved directly by any one except the sufferer. 7 Allen (Mass.) 118-124; 169 Ala. 131; 53 So. Rep. 80. Appellee was also permitted to state that he was worried because he did not know how he was "going to get by with his little children." This was clearly inadmissible. 89 Ark. 58. Mental suffering from apprehension as to the future of one's family is not the natural results of the injury, but depends upon pecuniary conditions and social relations of his family in the future, and this was a direct appeal to the sympathy of the jury, and prejudicial. 69 Tex. 694; 7 S. W. 77; 57 Kan. 40; 45 Pac. 60; 79 N. E. 685. Testimony as to the size of his family, and that he was its sole support, and that his wife was dead, etc., was clearly inadmissible. 74 Ark. 326; 100 *Id.* 535.

4. Testimony of witness that he relied on inspection was erroneous and prejudicial and was not cured by the court's remarks that it was not competent. 60 Ark. 76; 100 *Id.* 116. The testimony was wholly irrelevant. The testimony as to the reliance of the witness or appellee upon the inspection of others was not admissible. 22 C. J. 617; 97 Ill. App. 7; 12 N. Y. S. 306.

5. The testimony of the optometrist as to the condition of plaintiff's eye and the chance of improvement was incompetent, as he was not a physician or oculist and was not an expert, and his opinion was worthless and inadmissible.

6. Doctor Crump's testimony as to what would happen to the other eye and plaintiff's condition if the other eye were destroyed, was mere conjecture and inadmissible, as was also the testimony of W. H. Walker, the superintendent. Testimony regarding similar accidents is inadmissible. 58 Ark. 154; 130 *Id.* 491; 99 N. W. 114; 40 Cyc. 2420.

7. Improper questions were asked Doctor Jones. A question in the form of an assertion suggests an af-

firmative answer and is objectionable. 40 Cyc. 2425. See, also, 40 Cyc. 2433 and 2517; 15 Ark. 252.

8. Testimony as to the price of lumber was palpably irrelevant and hormful.

9. Appellee's testimony that he relied on another inspection and thought there was no danger. This was, by the use of glaringly leading questions, and was prejudicial and error. 97 Ill. App. 7; 12 N. Y. S. 306.

10. Testimony as to what would have happened under circumstances which did not really exist was not admissible. 22 Cyc. 514.

11. A question answered is properly excluded. 40 Cyc. 2437. Leading questions are improper and should not be allowed. 40 Cyc. 2422.

12. Hearsay evidence is not admissible. 22 C. J. 199.

13. The corporate existence of appellant was not proved. None of the testimony introduced by appellee to prove that appellant was a foreign corporation was admissable or sufficient for that purpose. 14 Cyc. 174. Our courts do not take judicial knowledge of the laws of other States. 71 Ark. 177. The evidence was wholly insufficient to show the existence of a foreign corporation.

14. The court erred in its instructions to the jury, both in giving and refusing those asked. No. 1 was obscure and unintelligible and it further assumes certain facts as proved. 38 Cyc. 1600. It should have left it to the jury to find the facts, and not assumed them as true 38 Cyc. 1658 and Arkansas cases cited. No. 2 was also error, as it makes the master liable as an insurer of the safety of an employee and imposes on him an impossible degree of care, ignoring the rule that he is required to exercise only ordinary care. 26 Cyc. 1102. The defenses of appellant were wholly ignored. 17 C. J. 1061.

15. It was error to give the third request for appellee. 99 Ark. 69-76. Also error to give the fifth instruction for plaintiff. The definition of contributory negligence on part of appellant is error.

16.   The seventh request of appellee was error, as it singles out and unduly emphasizes a proposition of law.   75 Ark. 76-86; 38 Cyc. 1680.

17.   Instruction No. 8 for appellee was a peremptory instruction and should not have been given.   C. & M. Digest, § 7144; 63 Ark. 477-484.   The interpretation of the language of statutes is for the court, and not for the jury.   102 Ark. 205-7.

18.   The ninth instruction for appellee was palpable error.   It ignored the facts that only the present value of the reduction of future earnings should be awarded.   17 C. J. 906.   Nor did it correctly state the rule as to the assumption of risk.   26 Cyc. 1204.   And it further placed the burden of proof on appellant to show that appellee knew and appreciated the dangers, while the contrary is the rule—that the servant is presumed to know the ordinary risks of his employment.   82 Ark. 11, 17.

19.   The eleventh instruction for appellee was error.   Appellee assumed the risk.

20.   The appellant's instructions correctly stated the law, and it was error to refuse them.   26 Cyc. 1092, 1248, 1297; 60 Ark. 582; 5 Thompson on Negl. (12 ed.) 69, par. 5417; 32 So. Rep. 15.   It was also error to modify instruction No. 11.   32 Cyc. 745.

21.   It was error to refuse appellant's thirteenth request.   A servant assumes all obvious risks of the work in which he is employed.   118 Ark. 304; 95 *Id.* 560.   It was error to modify it as the court did.   It is the absolute duty of a servant to observe patent defects.   58 Ark. 125-130.   See, also, 41 Ark. 542-9; 81 *Id.* 346; 101 *Id.* 201; 135 *Id.* 480-9.

22.   Appellee assumed the risk of this accident, and the court erred in its instructions, given and refused. 135 Ark. 480-9; 26 Cyc. 1236; *Ib.* 1202-3; 97 Ark. 486-9.

23.   The verdict is not sustained by the evidence. 70 Ark. 385-6.

*T. M. Nall* and *Rowell & Alexander,* for appellee.

1.   The opening statement of counsel for appellee was not prejudicial.

2. The testimony as to mental anguish of appellee was withdrawn by the court upon objection. 100 Ark. 122.

3. The testimony of witness that he relied on inspection was not error.

4. Appellant's objections to the testimony of the optometrist are not well taken. He was qualified to treat the vision of the eye, and he was duly licensed and had been on the State board, and his profession is recognized in forty-six States, and numerous other countries. He was a competent witness under our decisions.

5. The testimony as to other accidents was invited by questions asked by appellant, and if error was invited error. 126 Ark. 615; 137 Id. 228. The decisions cited by appellant do not control this case.

6. No error in the questions asked Doctor Jones.

7. There was no error in the testimony as to the price of lumber. There was a dispute as to the grade of lumber.

8. Appellee's testimony that he relied on another inspector and thought there was no danger, was not error. The cases cited by appellant are not in point nor parallel.

9. Testimony as to what would have happened in circumstances which did not really exist was not error here.

10. No hearsay evidence was admitted, as the record shows.

11. The corporate existence of appellant was properly proved. 131 Ark. 273; 114 Id. 344; 134 Id. 23, 227 S. W. 609; 140 Ark. 135; 95 Id. 588.

12. Appellant has not properly set out the instructions in his abstract or brief. We do so, and no reversible error appears. On the whole, they state the law of this case. 93 Ark. 564; 109 Id. 288; 101 Id. 197; 126 Ark. 449.

13. The judgment of a lower court will not be reversed upon the weight of evidence if there be any legal

evidence to support it; there must be a total failure of evidence to sustain it. 15 Ark. 540; 97 Id. 87; 97 Id. 442.

The question of contributory negligence was for the jury, and their verdict, on proper instructions as here, is final. 143 Ark. 106. Similar cases to this are found in 102 Ark. 562; 85 Id. 503; 93 Id. 88.

The act of 1907 applies to all corporations and the burden is on defendant to prove contributory negligence. 92 Ark. 502; 174 S. W. 222. It was for the jury to say how the injury occurred, and they have settled it by their verdict. 103 Ark. 476; Ib. 61.

14. The verdict is not excessive, and the evidence sustains it. 107 Ark. 512.

WOOD, J. The appellant is a Missouri corporation operating sawmills in the State of Arkansas. Appellee was in its employ in the capacity of a "ripsawyer." The appellee's duties required him to take from a table near by boards of lumber that had been placed thereon and to feed these boards to the ripsaw; that is, to push the boards against the saw in order to rip them into narrow boards. When the saw thus passed through the boards, they were taken out by an employee at the other end who was called the "tailer." The boards handled by the appellee were first conveyed on endless chains from the downstairs of the plant, and as they reached the second floor they were taken off the conveyors by a negro employee called a "passer" or "puller," and were placed on a table to be handled by the appellee.

On the 30th of March, 1920, about 2 o'clolck p. m., the appellee had pushed a board to the saw and was standing with another board ready to go through when the saw clicked and a splinter flew out, striking the appellee in the left eye and severely injuring him.

The appellee brought this action against the appellant to recover damages for the injury, and he alleged that the injury was caused by the negligence of the agents and servants of appellant in charge of receiving lumber from the floor below in not inspecting the lumber and dis-

carding that which was defective on account of splinters and knots, which it was their duty to do. The appellee alleged that it was his duty to run the lumber through the saw, one piece following another, without interruption, and therefore he did not have time other than to casually cast his eye to the table for a piece of lumber; that he had no time to inspect same for defects, and therefore, he did not know of this defect, but it was known, or in the exercise of ordinary care should have been known, to the servant whose duty it was to inspect the same before placing it on the table for handling by the appellee; that the failure of appellant's servant to discharge his duty as alleged was the cause of appellee's injury, for which he asked a judgment for damages in the sum of $20,000.

The appellant answered, denying all material allegations of the complaint and set up the defenses of contributory negligence and assumed risk on the part of the appellee.

The appellant testified, among other things, that when the lumber came from downstairs it was the duty of the man that stands by the chain and pushes the boards off on to the table, called the lumber passer, to inspect that lumber. Only high grade, first-class lumber, clear of knots and splinters, passed to the appellee's saw. Any lumber that was not proper to go to that saw was passed back to the other machine or thrown aside—"that was what the 'passer' was supposed to do." This passer was a colored man, who had been working at the job about a week. Witness heard Walker, the superintendent, and Mitcham, who kept up the saws, tell the passer to inspect the lumber and to put nothing but the best lumber there for appellee to handle, and he relied on the passer doing his duty. In describing his own duties, appellee stated that it was his duty to keep the lumber cut, keep the machine going, and keep them in stock, and he did not have any time to inspect the lumber on the table, and it was not his duty to do so. He had to keep his eye on the machine all the time. Witness further explained that

he received his injury on account of a shattered and splintered piece of board. The splinter came right out from the saw under the board. If the inspector had done his duty, a board with splinters could not get to the table from which the appellee took the lumber that he passed through the saw. Appellee had once filled the position of "passer," and knew what his duties required. Appellee was told that this colored passer was inspecting the lumber, and appellee relied on his performance of that duty. Other witnesses testified corroborating the above testimony of the appellee as to the respective duties of the ripsawyer and the "passer," and to the effect that if the "passer" had exercised ordinary care to inspect the lumber he could have detected a piece of lumber that had a large splinter on it, or a knot.

On the other hand, there was testimony on behalf of the appellant tending to show that it was the duty of the ripsawyer himself to inspect the lumber before he put it through the ripsaw and "not to put through the saw any (boards) that were not fit to make into the stock he was making;" that appellee was instructed by appellant's superintendent and also by appellee's foreman not to rip anything that would not make three-eighths stuff; that it was the duty of the ripsawyer to see that they were running clear lumber on No. 3; and, in case the off-bearers from the chain put stuff on appellee's table that was not suitable for the flooring, to throw it out. It was the duty of the lumber "passer" to a certain extent to inspect the lumber as he took it off the chain to put it on the ripsawyer's table, and he had been expected to do so. The only purpose in instructing them to put good lumber on appellee's table was to get the best stock into a thin "veneering flooring." It was not to protect the appellee in any way. All of them that pulled the boards off the chain on the table were told to always pick the lumber and get good stuff for that saw, but sometimes they got a bad piece on there, and they told the fellow who was ripping to throw it out if it was not fit to make three-eighths stuff.

There was also testimony on behalf of the appellee to the effect that lumber pullers were usually negroes. They ordinarily used inexperienced common labor for that job. There was also testimony adduced by the appellant tending to prove that the machine which the appellee was operating was protected by a hood and guides so as to keep splinters and dust and particles from the saw from flying out and striking the operator above the waist line. The ripsawyer wore a leather apron to protect him against the splinters and knots that might fly from the saw and to help him hold the plank to the guide line. If he were in an erect position, it would be impossible for a splinter from the saw to strike him in the eye. Appellee had been instructed not to stoop down and look in the machine while he was operating the same. At the time the appellee received the injury, he was stooping over looking into the saw and punching with a stick about twelve or fourteen inches long. The appellant's superintendent had seen the appellee several times stooping down looking into the machine while operating the same, and he had cautioned him every time about that.

In instruction No. 1, given at the instance of the appellee, the court told the jury in substance that, if appellee was injured by want of ordinary care upon the part of the servant of appellant in failing to properly inspect the lumber placed upon the table for the appellee to handle, and this failure to inspect was the proximate cause of the injury to the appellee, the appellant would be liable; that it was for the jury to say from the evidence whether the appellee was in the performance of his duty at the time of his injury, and whether the appellant failed to exercise ordinary care to *protect the appellee from danger* while in the performance of his duty, and whether such want of ordinary care, if shown, was the proximate cause of the injury to the appellee.

In instruction No. 2 the court told the jury that the duty rested upon the appellant to permit no act of negligence whereby its servants may suffer injury and to exercise ordinary care to *protect him from danger;* that

if they believed the appellant failed to exercise ordinary care to properly inspect the lumber placed upon the table for the appellee to pass through his machine, and a piece of defective lumber was placed upon the table for appellee's use which was the proximate cause of the injury to the appellee by causing a large splinter to be thrown therefrom, striking the appellee in the left eye, while he was operating the machine and using ordinary care for his own safety, without warning to him, and injured him, and that appellant thereby failed to exercise ordinary care to *protect plaintiff from danger,* and that the act of the servants of appellant in failing to properly inspect the lumber was the proximate cause of the injury to appellee, they should find for him and assess his damages at such sums as they found from the evidence would compensate him for the injury received, unless they found that he was guilty of contributory negligence or had assumed the risk as defined in other instructions.

In instruction No. 8, given at the instance of the appellee, the court instructed the jury that "every corporation, except while engaged in interstate commerce, shall be held liable in damage to any person suffering injury while he is employed by such corporation resulting in whole or in part from the negligence of such corporation or from the negligence of any of the officers, agents or employees of such corporation."

Instruction No. 10 is as follows: "No. 10. Before it can be said that plaintiff assumed the risk in this case, you must find from the evidence that plaintiff not only knew of the danger to which he was exposed by reason of the employment and service, and which caused the injury, but also comprehended and appreciated such danger, or ought to have appreciated and comprehended the same, and the burden of showing that the plaintiff did know of and did appreciate such dangers rests on the defendant, unless this fact is shown by the plaintiff's own testimony or that of his witnesses."

Among others the appellant asked the following instruction: "No. 6. If you find from the evidence that the reason for instructing other employees to place on Wilkinson's table only high grade boards was merely to select boards suitable for the manufacture of a particular kind of finished lumber, and not for the protection of the operator, your verdict will be for defendant."

The court modified and gave appellant's prayer for instruction No. 18, the modification being indicated by the words set forth in italics, as follows: "Even if you find from the evidence that another employee of the defendant was negligent in allowing a defective board, or a board of low grade, to reach Wilkinson, if you further find from the evidence that Wilkinson knew that the board he placed in the machine was of low grade, or defective, and that it was more likely to splinter than a board of high grade, or one not defective, or if these facts were so obvious that an ordinarily prudent person, in the circumstances, would have been aware of them, and appreciated them, your verdict should be for defendant, *unless you find from the evidence that it was the duty of another employee of the defendant's to inspect the board and that Wilkinson relied on him so to do.*"

The appellant asked the instruction without the modification, and objected to the ruling of the court in modifying, and giving it as modified.

The trial resulted in a judgment and verdict in favor of the appellee. From that judgment is this appeal.

1. The court gave an instruction to the effect that the jury could not single out any one instruction given by the court, but must consider all of the instructions together as the law of the case by which they were to be guided in arriving at their verdict. In *Southern Anthracite Coal Company v. Bowen,* 93 Ark. 140, 149, 150, we said: "Each instruction must be read as a whole and all of its parts must be considered in determining its meaning, and when reference is made in one instruction to some other part of the charge, or when words are used in some

instructions that are correctly defined in others, the other parts of the charge referred to and the other instructions must be considered in determining whether or not the particular instruction under consideration are correct." The rule is well stated in *St. L. S. W. Ry. Co.* v. *Graham,* 83 Ark. 61, as follows: "It is generally impossible to state all the law of the case in one instruction; and if the various instructions separately present every phase of it as a harmonious whole, there is no error in each instruction failing to carry qualifications which are explained in others."

Applying the above rule to the instructions of the court in the case at the bar, we find that the court's charge, when considered as a whole, did not correctly declare the law applicable to the issues and to the facts which the testimony tended to prove. The appellee bottomed his cause of action on the alleged negligence of the appellant in failing to have the lumber which appellee was handling properly inspected. Appellee alleged that this duty devolved on a servant called the "passer," and that he negligently failed to discharge that duty. The appellant defended the action on the ground that it was the duty of the appellee himself to inspect such lumber, and that such inspection as was required of the "passer" was not for the purpose of protecting the appellee, but to aid the appellee in securing as the output from the ripsaw a certain quality of high grade lumber called "veneering flooring," which it was the duty of the appellee to produce, and that appellee's injury was therefore incident to the risk which he assumed and was caused by his own negligence. The appellee did not allege that the appellant was negligent in failing to exercise ordinary care to furnish him a safe place in which to work, nor appliances with which to do the work, nor in the employment of unskillful or inefficient fellow-servants to aid him in the performance of his duties.

Such were the issues, and the testimony adduced warranted the court in submitting them to the jury. But the court erred in not submitting these issues in appro-

priate and correct instructions, and its charge as a whole was not harmonious and consistent, but was well calculated to mislead the jury. For instance, the court, in its first and second instructions given at the instance of the appellee, told the jury in effect that it was the duty of the appellant to protect appellee from danger while in the performance of his duty, and, if the appellant through its agents and servants failed to exercise ordinary care to inspect the lumber placed on the table to be handled by the appellee, and such failure was the proximate cause of the injury to the appellee, then the appellant was liable. The instructions as thus framed wholly ignored the contention of the appellant that it was the duty of the appellee to inspect the lumber himself, and that no such duty was required of the "passer" in order to make appellee's place of work safe and to afford protection to the appellee.

The court refused appellant's prayer for instruction No. 6, in which appellant sought to have its theory on this phase of the case presented to the jury, and we do not find that any instruction was given covering appellant's theory and contention. There was evidence to justify such contention, and the court erred in ignoring it. On the issue of negligence, the court should have told the jury that if under the evidence it was the duty of the appellee to inspect the lumber to see that it was free from splinters, knots and other defects, and he failed to perform this duty which resulted in his injury, he assumed the risk, and the appellant was not liable; but on the other hand, if it was the duty of appellant's servant, the "passer," to inspect the lumber to see that the same was free from defects liable to produce the injury to appellee and to afford him protection from such defects while passing the lumber through the ripsaw, and the passer negligently failed to discharge this duty, and such failure was the proximate cause of the injury to the appellee, then the appellant was liable.

If it was the duty of appellee to make the inspection, then the injury resulting from the failure to perform

this duty was one of the ordinary risks of the employment which he assumed. But if the duty devolved on the appellant's servant to inspect the lumber in order to afford the appellee protection, then the appellee did not assume the risk resulting from a failure on the part of the "passer" to perform that duty, unless such failure of the "passer" subjected the appellee to a danger which was so open and obvious that appellee was bound to know of and appreciate it in the performance of his own duties and in the exercise of ordinary care to protect himself from the ordinary risks and dangers incident thereto.

Instruction No. 8, given at the instance of the appellee, is a literal copy in part of the statute, 7144, Crawford & Moses' Digest. It is therefore correct as an abstract proposition of law, but the court erred in giving it without hypothetical statements showing how it would be applicable to the facts developed in the case. Without such explanation, it was calculated to mislead the jury, and was tantamount to a peremptory instruction in favor of the appellee, and is in conflict with other instructions. *K. C. F. S. & M. Ry. Co.* v. *Becker,* 63 Ark. 477, 484; *St. L., I. M. & S. Ry. Co.* v. *State,* 102 Ark. 205-207.

Instruction No 10, given at the instance of the appellee, was erroneous because it also ignored the theory of the appellant that it was the duty of the appellee to inspect the lumber for himself. If such were appellee's duty, then he assumed the risk, whether he knew of the danger resulting from a failure to perform such duty or not. He also assumed the risk of obvious defects. It is also erroneous because it placed the burden of proof upon the appellant to show that the appellee did know and appreciate the danger. The proof shows that appellee was an employee of mature years and experience. It is not alleged and not pretended that the appellant owed him any duty of instruction or warning. If it was his duty to make the inspection, the risk of injury from failure to perform this duty was one of the ordinary risks which he is presumed to know. *C., O. & G. R. Co.* v. *Thompson,* 82 Ark. 11.

The court erred in modifying appellant's prayer for instruction No. 18 by adding the words in italics, for if the appellee knew that the board was defective, or, if the defect was so obvious that a man of ordinary care must have known it, then he assumed the risk, even if it was the duty of the appellant's "passer" to inspect the boards. *E. L. Bruce Co.* v. *Yax,* 135 Ark. 480.

It would unduly extend this opinion to comment further upon the numerous specific assignments of error concerning the rulings of the court in giving and refusing prayers for instructions. It is believed that what we have already said will be a sufficient guide to the lower court in framing its charge on a new trial. We have already pointed out errors in this respect of which the appellant has the right to complain. There were other errors in some of the prayers for instructions, but they were not prejudicial to the appellant. There were sixty-two assignments of error as grounds of appellant's motion for a new trial, but many of these rulings upon which error is predicated may not arise on another trial, and hence we do not comment upon them. For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.