ARKANSAS SHORT LEAF LUMBER COMPANY *v.* WILKINSON.

Opinion delivered July 3, 1922.

1. MASTER AND SERVANT—ASSUMED RISK.—In an action for injuries to a ripsaw operator in a sawmill, sustained when a splinter struck him in the eye, in which there was evidence that the lumber fed into the ripsaw was supposed to be clear of knots and splinters, the questions of assumed risk and contributory negligence and of the master's negligence were for the jury.

2. DEPOSITIONS—REFUSAL TO QUASH.—Refusal to quash depositions on the ground that during the taking of the deposition and while counsel for defendant was cross-examining a witness for plaintiff, the notary permitted counsel for plaintiff to confer with the witness was not error.

3. TRIAL—IMPROPER ARGUMENT—INSTRUCTION.—In an action for injuries to a ripsaw operator, an instruction charging the jury not to consider "the argument of either counsel that is not borne out by the record, but you will consider the testimony as given you by the witnesses only, disregarding anything that is not in the record," *held* sufficient to remove any prejudice that might be produced by remarks of counsel in argument that rules of the American Hardwood Manufacturers' Association might show that it was the duty of the passer to inspect the lumber.

4.  APPEAL AND ERROR—HARMLESS ERROR.—In an action for injuries to a ripsaw operator, the action of the court in permitting witnesses to testify that they belonged to the American Hardwood Association *held* not prejudicial.

5.  DAMAGES—AMOUNT OF VERDICT.—A verdict for $5,750 given to plaintiff, who was 45 years old and was earning $3.75 per day with the prospect of increased wages at the time of the accident, for the loss of an eye, which reduced his earning capacity, and for injury to his health caused by the accident, *held* not excessive.

6.  DAMAGES—PHYSICAL INJURY—ELEMENTS OF RECOVERY.—An employee who lost an eye as result of the employer's negligence could recover damages for physical suffering and inconvenience and for humiliation and mental anguish caused by disfigurement.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

*Mike Danaher* and *Palmer Danaher,* for appellant.

*T. N. Nall* and *Rowell & Alexander,* for appellee.

WOOD, J.  The appellee was an employee of the appellant in the capacity of rip-sawyer.  He was working at appellant's sawmill on the second floor.  The lumber he sawed came from the first floor on moving endless chains, and when it reached the second floor a negro employee, called the passer, or puller, took the boards from the chains and placed them on the table beside the appellee, to be handled by the appellee and pushed by him through the rip-saw.  The appellee was passing one of the boards through the rip-saw when a splinter flew out and struck him in the eye, severely injuring him.  The appellee instituted this action for damages, alleging that it was the duty of the lumber passer to inspect the boards before placing them on the table for his use; that the passer negligently failed to discharge this duty, and on account of such negligence the injury occurred.

The appellant defended on the ground that the appellee assumed the risk and was guilty of contributory negligence.  The appellee testified substantially as follows:  He was feeding the ripsaw No. 3, cutting clear lumber free of knots and splinters.  It was supposed to be the clearest and best lumber that comes through.

The lumber starts down stairs and comes up stairs on endless chains. The clearest lumber and the rough lumber together. The No. 1 ripsaw man upstairs takes the first rough lumber and it goes on to No. 2 ripsaw, and the passer takes the next—takes what he can use off. It was coming so fast he could not get all of it off, and some of the rough lumber came down the chain to No. 3. There was a man supposed to throw the lumber back to No. 1 and No. 2 ripsaws, if not good, and the best lumber was supposed to come to plaintiff's table free from knots and splinters. Before putting it on appellee's table the passer had the duty of inspecting the lumber and throwing back the rough lumber, and putting the best lumber on appellee's table in order to make a better class of lumber. Under the rush they had, appellee did not have time to make a better class of lumber and protect himself from splinters, and the foreman instructed him to run the lumber through the machine as fast as it would go—to butt the ends together and keep them going through with the ends together, and the passer would inspect it. Under the orders of the superintendent at that time in the rush it was not appellee's duty to insect the lumber for knots and splinters. The price of lumber was going down. The appellant had a rush order they wanted right away. The appellee stated: ''If a piece of lumber got by inspectors No. 1 and 2, and came to inspector No. 3, it was his duty to pass it back to No. 1 and 2, and to place on plaintiff's table the lumber that was clear of knots and splinters. That lumber was put there for the purpose of making a better class of lumber, and under the rush, to protect plaintiff from knots and splinters.'' Again he says: ''They (appellant) had speeded the saws up to where they would cut the lumber faster, and that was the reason Mr. Walker had given instructions to me to butt the ends of the lumber together, so as to keep the lumber in the machine, keep it going all the time. They speeded the saws up a

day or so before that. I think they were going around 2,600 revolutions. They speeded them up because they wanted more lumber cut, and more work out of the machine. A careful inspection would have detected that splinter in that board. I did not have time to inspect that board before I put it in the machine and keep the boards butted end to end, as I have been instructed to do. * * * If the inspector does his duty, there is no danger from knots and splinters. * * * * Under the superintendent's direction, appellee had nothing to do with the lumber at all except put it up against the saw. He did not have to look at it at all, and did not have time.''

On cross-examination appellee stated, among other things: They were supposed to put into ripsaw No. 3 boards absolutely free from knots and splinters, and if that had been done his eye would not have been hurt. He knew the very best grade did not come to the flooring mill, but he knew the best grade of flooring was made out of a good grade of lumber, free from knots and splinters. The lumber that came through there generally was simply the best that came to the flooring mill. What went through there was supposed to be the best that they cut into oak flooring. If the best that comes to the flooring mill had some knots and splinters, they would be bound to be thrown out at times.

The testimony on behalf of the appellant was to the effect that the best grade of hardwood lumber is called "first and second", the next best "No. 1 common", the next "No. 2 common", and the next "No. 3 common." A board belonging in the "first and second" grade could have from one to five standard defects— that is, a board might have as much as a six-inch split and five knots not exceeding one and a quarter inches in diameter, or other defects. A standard defect, five of which are permissible even in a board of that best grade, is a knot one and a quarter inches in diame-

ter, or its equivalent in extent of damage. The testimony of the witnesses for the appellant was that the best grade of hardwood lumber was never sent into the flooring factory. The appellee himself testified in regard to this as follows: "I know the very best grade don't come to the flooring mill, but I also know that the best grade of flooring is made out of a good grade of lumber, free from knots and splinters." The appellee was asked this question: "Q. In other words, lumber is run through the flooring mill to take out the knots, and that is the reason it is cut into short lengths? A. Yes, sir; but there is different kinds of lumber that goes through these different machines. Only the very best of it was supposed to go through ripsaw No. 3."

1. This is the second appeal in this case. The case on first appeal is reported in 149 Ark. 270. The facts on the last trial were substantially the same as on the first trial, except the testimony of the appellee above set forth and the testimony of the witnesses for the appellant as to the kind of lumber that appellee was to put through the ripsaw.

The appellant contends that the above testimony shows that the appellee knew that nothing but boards having defects therein went into the flooring mill and into the machine that he was operating, and that therefore appellee knew of the danger to which he was necessarily exposed in passing the boards to the ripsaw having defects therein, and consequently assumed the risk of the injury which he received as one of the dangers incident to his employment. But it occurs to us, from the above testimony, that it was an issue of fact for the jury to determine whether or not the appellee assumed the risk.

2. On the first appeal the judgment was reversed because of errors in the instructions of the court. We find from an examination of the instructions given by the trial court at the last trial that the court eliminated the

errors pointed out in the former trial, and its instructions on the last trial were in conformity with the law as declared by the opinion of this court on the first appeal. In other words, the instructions of the trial court at the last trial on the issues of negligence, contributory negligence, and assumed risk are free from error. Under the evidence these were issues for the jury. We find no reversible error in the instructions on the measure of damages and in regard to comparative negligence.

3. Learned counsel for appellant complains that counsel for the appellee were permitted repeatedly to ask the appellee and other witnesses leading questions and to make a number of derogatory remarks as to the manner in which the defendant was conducting its case, and was permitted to examine appellee and other witnesses on re-direct examination as to matters fully covered in their direct examination.

Upon examination of the record we find that counsel for both appellee and appellant frequently asked questions that were leading in character and therefore improper, but we do not discover that the errors complained of in this respect were of such substantial character as to call for a reversal of the judgment.

4. Counsel for appellant contends that the court erred in not suppressing the deposition of one of the witnesses for the appellee because, during the taking of the deposition, while counsel for the appellant was endeavoring to cross-examine him, the notary before whom the deposition was being taken permitted counsel for appellee to confer with the witness. The court did not err in refusing to quash the deposition on this ground.

5. The appellant complains because the trial court permitted the appellee to ask certain witnesses whether they belonged to the American Hardwood Manufacturers' Association, and in permitting counsel for the appellee to say in his argument that the rules of such association might show that it was the duty of the passer to inspect the lumber. In response to appellant's objection to-

these remarks and the testimony, the court instructed the jury that "they must not consider the argument of either counsel that is not borne out by the record, but you will consider the testimony as given you by the witnesses only, disregarding anything that is not in the record." Counsel for the appellee, in his argument before the jury, contended that the remarks to which the appellant objected were made in answer to something that had been said by counsel for the appellant. In the colloquy that took place between the counsel for the respective parties, during the alleged improper argument of appellee's counsel, and in response to the frequent objections made to such remarks, the court told the jury that they would not consider any remarks that were not borne out by the evidence in the record, and, after the argument was concluded, gave the instruction as above indicated. We are convinced that the instruction of the court to disregard all improper remarks of counsel that were not responsive to the evidence adduced was sufficient to remove any prejudice that the remarks might otherwise have produced in the minds of the jury. *Hall* v. *Jones,* 129 Ark. 18-25. There was no prejudicial error in permitting the witnesses to testify that they belonged to the American Hardwood Association.

6. Appellant contends that the verdict and judgment for $5,750 was excessive. It could serve no useful purpose to set out and discuss in detail the testimony bearing on this issue. Appellee, by reason of the injury, has lost the sight of his left eye. He was forty-five years of age, and at the time of his injury was earning $3.75 per day, with the prospect of an increase in wages. The loss of an eye has reduced his earning capacity, and his testimony shows that he suffered great physical pain from the time of his injury until his vision became entirely destroyed in that eye. Since that time he has not suffered so much, but does suffer at times. Before the injury his health was good, but it is not as good now as before. The loss of his eye has disfigured

him. Appellee stated that, aside from the physical suffering and inconvenience, he has been humiliated by this disfigurement to his person. The jury and the trial court had the opportunity to observe the extent of such disfigurement, and the jury had the right to take into consideration the mental anguish endured by the appellee on account of his injury. All of the above were proper elements to be considered by the jury in estimating the damages which had accrued to appellee because of the injury he had sustained. These were all taken into account and reduced to a present value in the aggregate sum of $5,750. It occurs to us that when this amount is paid to the appellee it will not afford him more than a reasonable pecuniary compensation for the injury he has sustained. The verdict and judgment are therefore not excessive.

Other errors are assigned, and we have considered them and find that they are not prejudicial to the rights of appellant and not of sufficient importance as a precedent to call for further comment. The record presents no reversible errors, and the judgment is therefore affirmed.