F. KEICH MANUFACTURING COMPANY v. WALLACE.

Opinion delivered July 5, 1926.

1. MASTER AND SERVANT—NEGLIGENCE OF FOREMAN—INSTRUCTION.—An instruction that defendant's engineer was negligent in turning on steam if he knew or should have known that plaintiff was attempting to turn the flywheel in defendant's sawmill off the center, *held* supported by proof.

2. MASTER AND SERVANT—NEGLIGENCE—INSTRUCTION.—Undisputed evidence that it was plaintiff's duty to help roll a flywheel off center when ordered *held* to warrant an instruction that, if the employee was in the discharge of his duty in attempting to do so, he could recover for an injury caused by the defendant's engineer turning on the steam or neglecting to turn it off.

3. TRIAL—IMPROPER ARGUMENT—CORRECTION.—Where defendant's attorney stated that he wished the jury could know why the case was in the county where neither of the parties resided, response of plaintiff's counsel that it was brought to the county possibly on an agent's false affidavits, *held* not prejudicial error, where he withdrew the remark on objection, and the court instructed the jury not to consider it.

4. DAMAGES—PERSONAL INJURIES.—A verdict of $22,541, of which $13,833 was for loss of earning capacity and $8,708 was for pain and suffering, *held* not excessive in view of his permanent injuries.

Appeal from Mississippi Circuit Court, Osceola District; *W. W. Bandy,* Judge; affirmed.

STATEMENT OF FACTS.

John Wallace sued Silas Baker and F. Keich Manufacturing Company to recover damages for injuries received while in the employment of said company.

John Wallace was a witness for himself. According to his testimony, he was injured on the third day after he commenced to work for F. Keich Manufacturing Company. He was working by the piece, and was making shingle blocks. The lubricator valve on the engine broke, and the steam was cut off. Silas Baker, the millwright of the company, went to fix the defective part of the machinery, and John Wallace assisted him. After the repairs were made, it was found that the flywheel of the engine was on center, and the machinery could not be

started until the flywheel was pulled off of center. Baker gave the employees the signal to start the wheel. Wallace and other employees then went to the flywheel and started to roll it. Wallace caught hold of one of the spokes of the wheel with his hand and stood on another spoke so that he could exert more power in pulling the flywheel off of center. When the flywheel was pulled off of center, the flywheel started to running faster, and revolved with such a jerk that it carried Wallace around with it and severely injured him.

As above stated, when the flywheel gets on center, it cannot be started on its own power, and it was the duty of one of the employees to roll the flywheel of the engine off of center, and then steam is turned on and the machinery started up. It was the duty of Silas Baker to order the employees to roll the flywheel to get the flywheel off of center so that it would start. It would frequently stop that way, and the millwright would ask any of the employees present to start it.

Other witnesses who were working at the time the appellee was injured corroborated his testimony.

Os Bowman was also a witness for appellee. According to his testimony, he had worked around sawmills for thirty years, and knew the location of the mill where the appellee was hurt. As he approached the mill on the morning the appellee was hurt, he heard a band slip and heard some one hollowing in the mill. As he ran in, one of the men said that a man was in the flywheel. He ran over there, and saw Silas Baker at the throttle with his hand on it. The engine was running under full steam. The witness hollowed to Baker to shut it down, and he did so. After they had got the appellee out of the flywheel, Baker said, "That is two I have killed in the last year or so."

L. W. Highsmith, the superintendent of the appellant, had control and direction of the sawmill, and was present on the day when Wallace was injured. The lubricator valve broke in the morning, and the witness told Baker to repair it. Baker went up on the boilers, a

distance of about ten feet from the engine, and cut off the steam. The flywheel was in line with the front of the boilers. The diameter of the flywheel was ten feet, and its weight was two tons. Its flange or rim was twenty-three inches wide. The width from the actual edge of the rim to the spokes at the thinnest point was ten and seven-eighths inches. The spokes were five inches thick. After the repairs had been completed the witness heard some one hollowing. He ran back into the boiler-room and saw a man inside the wheel. The engine was going slow. Baker then shut off the engine, and, approaching the witness, said, "We have killed a man."

Silas Baker was also a witness for the appellant. He was running the mill and looking after the machinery the day the accident occurred. He made the repairs on the lubricator valve, and shut off the steam before he did so. He opened the throttle valve and let the steam go out and then closed the valve. He took a wrench to get the lubricator valve off, and Wallace helped him. He went upstairs to get another wrench, and, when he returned, Wallace had the lubricator valve out. The witness then, with the help of Wallace, put on a new lubricator valve. The flywheel of the engine was on center, and they had to roll it to get it started. When they got the flywheel of the engine off of center, it started to revolving, and the fireman hollowed, "Shut it down." The witness did so, and knew that the steam was not on full.

Again the witness stated that there was some steam turned on at the time appellee was injured. He was asked who turned it on, and answered, "We might have rubbed against the valve." Baker admitted that he was the one who told them to turn the flywheel, and that, if there had not been any steam on, there would not have been any danger in doing so. After being notified that there was a man in the flywheel, Baker turned the steam off while Wallace was still in the revolving flywheel; he ran out to where Highsmith was and said, "I have hurt another man."

Wallace testified that he never touched the throttle while they were repairing the lubricator valve, and did not turn on the steam. A. Ketchum, a witness for appellee, testified that he saw Baker turn the steam on before Wallace got hurt.

The jury returned the following verdict: "We, the jury, find for plaintiff, John Wallace, against F. Keich Manufacturing Company, and assess his damages as follows:

"For loss of earning capacity..............................$13,833
"For pain, suffering and mental anguish......  8,708

$22,541
"H. E. Neblett, Foreman."

Judgment was rendered upon the verdict, and the defendant, F. Keich Manufacturing Company, has duly prosecuted an appeal to this court.

*Gautney & Dudley*, and *Cooley, Adams & Fuhr*, for appellant.

*T. H. Caraway*, for appellee.

Hart, J., (after stating the facts). The main reliance of appellant for a reversal of the judgment is that the court erred in giving instruction No. 1, which reads as follows:

"You are instructed that if Baker, as engineer, knew, or, in the exercise of reasonable care and observation, should have known, that plaintiff was attempting to turn the flywheel 'off center' and that it was necessary that the same be done before the engine could be started; that in so doing plaintiff was in the discharge of a duty and in the line of his employment, and if you find, while plaintiff was so doing, Baker turned on the steam, or, having previously turned it on, neglected to turn it off, and that this resulted in the rapid revolutions of the flywheel, causing the injuries to plaintiff, then this conduct on the part of Baker was negligence as that term has been defined, and your verdict will be for plaintiff, unless you further find that he was guilty of contributory

negligence or had assumed the risk, as those terms have been defined in other instructions.''

It is insisted that the instruction is erroneous and prejudicial to the rights of appellant, because it tells the jury that it was negligence for Baker to turn the steam on under the facts stated, or, if he had previously turned it on, it was negligence not to turn it off. It is claimed that there is no proof in the record that it was negligent to leave the steam on while attempting to roll the flywheel off of center, or that it was not the duty of Baker more than of Wallace to turn the steam off or on. We cannot agree with counsel in this contention. Appellee had nothing whatever to do with turning the steam on or off. His whole duty in the premises was to help roll the flywheel so as to get it off of center when told to do so by Baker. The undisputed evidence shows that Baker was running the machinery, and it was his duty to order the other employees to roll the flywheel so as to get it off of center, and that he did so. The testimony of the appellant showed that it was its duty to get the flywheel off of center. The testimony of Highsmith, the superintendent of the mill, as well as that of Baker, shows that there would have been no danger to appellee in helping to roll the flywheel if the engine had not been running. The only dispute about the matter at all was as to the amount of steam turned on. The witnesses for appellee testified that the steam was turned on full, while Highsmith and Baker testified that there was some steam turned on, but that it was not turned on full. Now, in the very nature of things, it is manifest that it was dangerous to turn on the steam while the employees were engaged in rolling the wheel. They could not make it revolve rapidly, and, if there had been no steam on, appellee could have readily jumped off of the flywheel after they started it to rolling. The purpose of turning on the steam was to make the flywheel revolve rapidly, and it was manifestly dangerous to turn the steam on while the employees were engaged in rolling the wheel to get it off of center. Hence there was no error whatever in

telling the jury that it was negligence on the part of appellant for Baker to turn on the steam, or, having previously turned it on, to neglect to turn it off while appellee was helping to roll the flywheel. There was some testimony to the effect that appellee could not have been required to help roll the wheel. But the undisputed evidence shows that it was a part of the duty of any of the employees who happened to be present to help roll the wheel when ordered to do so. Under these circumstances appellee was in the line of duty when he was hurt by the negligence of Baker in turning on the steam. In other words, appellee was engaged in helping to roll the wheel under the direction of Baker, and, while he was so engaged, Baker turned on the steam, thereby causing the revolving wheel to turn faster and injure appellee. According to the testimony of appellee, he did not turn on the steam, accidentally or otherwise.

A. Ketchum, a witness for appellee, testified that he saw Baker turn on the steam. Another witness testified that Baker was standing at the throttle when Wallace was being carried around by the rapidly revolving wheel. Still another witness testified that Baker was at the throttle when they went to turn the wheel. Baker denied turning on the steam, but the court submitted to the jury the question whether or not he did so. The undisputed evidence shows that the steam was turned on by some one, and this caused the flywheel to revolve so rapidly that it jerked appellee and carried him around with it. The act of turning on the steam and thus causing the flywheel to revolve rapidly while the appellee was in it was the proximate cause of his injury and constituted negligence on the part of appellant.

It is next insisted that counsel for appellee made a statement of matters not in the record, which were prejudicial to the rights of appellant and called for a reversal of the judgment. One of the attorneys for appellant, in his argument to the jury, said: "I wish you could know why this case is here in Mississippi County. Plaintiff lives at Lake City, Craighead County, and the

defendant lives in that county. Why then is it here? You ought to know."

In response to this statement, counsel for appellee said: "Mr. Adams says he wishes you to know why the case is here. I am willing that you should know. It was brought to this county—although I have no objection to its being here—it was brought in another county, and then brought to this county, and possibly on the false affidavits of an insurance agent."

Upon objection being made to the statement of appellee's counsel, he withdrew it. The presiding judge was in an ante-room right next to the court when the above colloquy took place. He returned to the courtroom, and, when one of the counsel for appellant stated the substance of what had occurred, as above quoted, the court said that the remarks of counsel for appellee were highly improper, and had no place in the lawsuit. The jury was instructed not to consider the same.

Under these circumstances we do not think any prejudice could have resulted to appellant. The attorney for appellee withdrew his remarks, and the presumption is that the jury were men of ordinary discretion and experience in the affairs of life. They were a part of the court engaged in trying cases, and we are of the opinion that the remarks of the court would necessarily have more influence upon them than the remarks of counsel. This is especially so, when we consider that the remarks of counsel for appellee were to an extent invited by previous remarks by one of the attorneys of appellant, and that counsel for appellee himself withdrew his remarks from the jury.

In support of our ruling on this point, we cite the following cases: *Chess & Wymond Co. v. Wallis,* 134 Ark. 136, 203 S. W. 274; *Arkansas Central Rd. Co. v. Goad,* 136 Ark. 467, 206 S. W. 901; *Central Coal & Coke Co. v. Orwig,* 150 Ark. 635, 235 S. W. 390; *Arkansas Short Leaf Lbr. Co. v. Wilkinson,* 154 Ark. 455, 243 S. W. 819; *Southern Anthracite Coal Mining Co. v. Rice,* 156 Ark.

94, 245 S. W. 805; *Black Brothers Lumber Co. v. Person,* 163 Ark. 40, 258 S. W. 976.

It is next insisted that the verdict is excessive, both as to loss of earning capacity and as to pain and suffering. Appellee was a steady worker and in good health at the time he was injured. He had been at work two days and three hours at the time he was injured. He was doing piece work, and was due $6.50 for his work. He volunteered to help repair the machinery in order that he might get to work again. He knew that he would not be paid anything for helping to repair the machinery, or for helping to start the flywheel rolling. He did these things in order that he might get back to work, and the jury might have inferred from this that he was an industrious man and that his earning capacity would increase. He had a life expectancy of practically twenty-one years. His body was horribly bruised and mangled by being carried around in the rapidly revolving fly-wheel, and it is evident that he can never work any more. Under these circumstances it cannot be said as a matter of law that the sum of $13,883 is excessive compensation for his loss of earning capacity. The jury allowed him $8,708 for pain and suffering. Appellee was in the hospital thirteen weeks, and suffered excruciating pain. When the engine was started, he was in the flywheel, standing on one spoke and pulling down with his hands on another spoke. Two ribs were broken from his breastbone and two other ribs were torn from his backbone when the engine was started, thereby causing the flywheel to revolve rapidly. Before the accident he was in good health, but cannot now even sit up a day at a time. He has no strength whatever in his left leg. His right leg was torn off, except hanging by a few muscles. It was amputated. His left leg was partly crushed, but has a fairly good union. Three or four inches of bone is gone out of it. He has two or three dislocated vertebrae, and this has a bad effect. He is not able to work, and never will be. It gave him much pain to walk at the time of the trial. The undisputed evidence

shows that he suffered great agony and must continue to suffer for the balance of his life,

When all these matters are considered, it cannot be said that the judgment should be reversed because excessive damages were awarded by the jury.

The court gave numerous instructions at the request of both parties, and it would seem that fewer instructions might have presented the issues. We have examined the instructions, however, and are of the opinion that there is no conflict between them, and that they have fully and fairly presented the matters at issue under the principles of law so often declared by this court. The instructions refused were either covered by the instructions given, or are argumentative in character.

We find no reversible error in the record, and the judgment will be affirmed.