MISSOURI PACIFIC TRANSPORTATION COMPANY
v. PARKER, ADMR.

4-5917—4-5946 (consolidated) 140 S. W. 2d 997

Opinion delivered May 13, 1940.

*Steve Carrigan* and *House, Moses & Holmes,* for appellants.

*Pace & Davis, W. F. Denman, Tom W. Campbell* and *Fred A. Isgrig,* for appellees.

*Moore, Burrow & Chowning, amici curiae.*

McHANEY, J. On the night of December 2, 1938, about 10:30 o'clock, three boys, James Carroll, Gordon Flagg and Joe Parker, residents of Morrilton, Arkansas, while returning from Plumerville to Morrilton, where they had attended a basketball game, had a collision with a large passenger bus belonging to appellant, Missouri Pacific Transportation Company, and driven by the other appellant, Chas. D. Johnson, and all three boys were killed. Young Carroll was driving the car in which they were riding, he and Flagg each being in their sixteenth year and Parker was past seventeen. The mothers of the Carroll and Flagg boys and the father of the Parker boy were duly appointed the personal representatives of their respective sons' estates and brought separate actions against appellants to recover damages for the benefit of said estates for conscious pain and suffering and for the benefit of themselves for the pecuniary loss sustained by each. Roy Palmer, a passenger on the bus, also brought an action against appellants to recover damages for personal injuries sustained by him. Although this accident occurred in Conway county, just a short distance south or east of Morrilton, where all the parties plaintiff and all the witnesses resided, these actions were brought at Prescott in Nevada county, some one hundred miles or more away.

The bus was traveling in an easterly direction toward Little Rock, and the car in which the boys were riding was going in the opposite direction and traveling on its right side of the highway. The negligence charged against appellants is that the driver of the bus, Johnson, attempted to pass another car traveling in the same direction and pulled over to his left side of the road, in the path of the car in which the boys were riding. Johnson, in an effort to exonerate himself, testified that the car in front of him suddenly stopped, at a time when he

was too close to it to stop his bus, and that to avoid striking it, he pulled to the left across the highway and into a ditch and that the car the boys were in had plenty of room to pass had it remained on the highway, but that its driver pulled to the right and struck the bus off the highway. We think a case of liability was made for the jury, even though his testimony had been accepted by the jury as true, for had he been driving at a reasonable rate of speed and at a safe distance from the car he says stopped in front of him, it would not have been necessary to drive the bus in the path of the oncoming car. The fact that it was a dark and rainy night with slippery road conditions made it all the more necessary for care and caution.

But appellants concede that a question of liability was made for the jury. Trials resulted in verdicts and judgments as follows: For the Carroll boy $16,000 to the mother and $2,000 for the estate on account of conscious pain and suffering; for the Flagg boy $16,000 for the mother; and for the Parker boy $16,000 for the father. There was also a verdict and judgment for $10,000 for appellee, Palmer, making a total of $60,000 in the four cases which were consolidated for purposes of trial, and have been briefed together on appeal.

A number of errors of the trial court are assigned and argued for a reversal of these judgments, some of which will be hereinafter discussed. One of them relates to the empaneling of the jury. In June, 1939, the court appointed three jury commissioners to select the regular panel of petit jurors to serve at the July term of the Nevada circuit court, and a jury was selected. After the July term of court was convened and the jury so selected was empaneled, a motion was made in another case then pending to quash the panel because one of the jury commissioners had served as such within four years prior to this service. The motion was sustained and the panel was quashed, and at the same time the court appointed three other jury commissioners to select a jury to serve at an adjourned term of court to convene on August 7, 1939. A jury of 32 was selected and summoned, but the court, on investigation, decided that the statutes

do not provide for the selection of a jury by jury commissioners after the term begins, but that, in case the jury panel is quashed, it is the duty of the court to order the sheriff to select a jury from the bystanders. So, the court, on its own motion, quashed the panel selected by the second set of jury commissioners and directed the sheriff to select a jury from the bystanders. The panel selected by the second set of commissioners contained nine of the jurors selected by the first set, which was quashed on motion. Acting on the order of the court, the sheriff selected a jury panel of 32 jurors who were the same as those quashed on the court's own motion. Appellants moved to quash the panel selected by the sheriff, setting out the matters above stated, which motion was overruled.

We think no reversible error was committed in this regard. The mere fact, if it be a fact, that the first and second panels selected by the two sets of jury commissioners were illegally selected, did not disqualify them as jurors, if later properly selected. Section 8333 of Pope's Digest provides: "If, for any cause, the jury commissioners shall not be appointed, or shall fail to select a grand or petit jury, as provided in this chapter, or the panel selected shall be set aside, or the jury lists returned in court shall be lost or destroyed, the court shall order the sheriff to summon a grand or petit jury of the proper number who shall attend and perform the duties thereof, respectively, as if they had been regularly selected."

While that section does not direct the court to order the sheriff to summon "bystanders," the fact is that the sheriff selected a jury from all parts of the county, they being present in court in obedience to a summons, having been selected by illegal jury commissioners, as the court thought. It is not suggested by appellants that any one of the jurrors so selected was otherwise disqualified. Compare *Hulen* v. *State,* 196 Ark. 22, 115 S. W. 2d 860.

Other assignments of error argued relate to the giving and refusal to give certain instructions. Instructions 1, 2, 3 and 4 were instructions given in the language

of act 300 of the acts of 1937, regulating the driving of vehicles on the highways of this state. Each instruction was a separate section of said act. We think no error was committed in this regard, as they were simple declarations of the law of the road which no person of reasonable intelligence could misunderstand. As said by this court in *St. L., I. M. & S. Ry. Co.* v. *Elrod,* 116 Ark. 514, 173 S. W. 836, where the reading to the jury of the lookout statute was held not to be error, ''the better practice is for the court to interpret any statute about the interpretation of which there is or may be a difference of opinion.'' A number of our cases hold that it is error to read to the jury as an instruction a statute which requires interpretation. Such a case is *K. C. Ft. S. & M. Ry. Co.* v. *Becker,* 63 Ark. 477, 39 S. W. 358, where the fellow-servant statute was read. Another is *Arkansas Shortleaf Lumber Co.* v. *Wilkinson,* 149 Ark. 270, 232 S. W. 8, where the fellow-servant rule as to all corporations, except while engaged in interstate commerce, was involved. Instructions 3, 4 and 5, requested by appellants and refused, were interrogatories to be propounded to the jury, calling for special findings of fact. Under § 1528, Pope's Digest, the jury may be required by the court to make special findings, but we have always held that this matter rests in the sound discretion of the trial court which this court will not disturb, unless there has been a clear abuse of it. *Johnson* v. *M. P. Rd. Co.,* 149 Ark. 418, 233 S. W. 699. No abuse of discretion is here shown. Another instruction given at the request of appellees, Carroll, Flagg and Parker, which it is said is erroneous relates to the measure of damages for the mothers and father. In view of the disposition we make of another assignment on the excessiveness of the verdicts and judgments in their favor, we think it unnecessary to set out said instruction or comment on it further.

On a supplemental motion for a new trial, the question of the qualification of Grady Harris, one of the jurrors who tried these cases, was raised for the first time, it being asserted that he was a resident of Hempstead county and not of Nevada county. The facts are that Harris was born and reared in Nevada county and

had always paid his personal property and poll taxes in said county and voted therein and nowhere else. A few years ago he bought a farm on the line between Nevada and Hempstead counties, a part being in each county. He moved in a tenant house just over the line in Hempstead county where he has since resided. He intended when he bought the farm, and still does, to build a new home on a site in Nevada county, but hard times have prevented him from so doing. We think under these facts that Harris has not changed his domicil from Nevada to Hempstead. See 17 Am. Jur. p. 599, § 16, and that he was a qualified juror, at least after the service had been rendered and the verdict returned.

The question that has given us most concern is the amount of the verdicts and judgments for these parents for the pecuniary loss sustained by them for the wrongful death of their minor sons. We think these verdicts of $16,000 each are grossly excessive under all the former decisions of this court. As to the verdict and judgment for $2,000 in favor of Mrs. Carroll as administratrix for the benefit of the estate, for conscious pain and suffering of the deceased, it is conceded by appellants that there is substantial evidence to support it, although consciousness at any time after injury is strongly in dispute. And we do not understand that appellants seriously contend that the judgment in favor of Roy Palmer for the injuries sustained by him is excessive. These two judgments will, therefore, be affirmed.

The recovery of damages for the pecuniary loss sustained by a parent for the wrongful death of a minor child and the amount of such recovery have been the subjects of numerous decisions of this court. We think it would be a work of supererogation to review and attempt to apply or distinguish principles to or from the case at bar. Those interested in the subject may find them reviewed and applied in *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110, where a verdict was reduced to $2,500 for the death of a four-year-old child; in *Chapman* v. *Henderson,* 188 Ark. 714, 67 S. W. 2d 570, where a verdict for $7,500 was sustained for death of a 20-year-old son who earned $5.50 per day and was the sole support

of his mother; in *Davis v. Gillin,* 188 Ark. 523, 66 S. W. 2d 1057, where a verdict for $12,500 was reduced to $2,500 for the death of a six-year-old child; in *Ark. P. & L. Co. v. Hoover,* 182 Ark. 1065, 34 S. W. 2d 464, where a verdict for $10,000 was reduced to $5,000 for the death of an adult son; in *Ark. P. & L. Co. v. Adcock,* 184 Ark. 614, 43 S. W. 2d 753, where a verdict for $2,500 was reduced to $2,000 for the death of a 17-year-old son; in *Mooney v. Tillery,* 185 Ark. 457, 47 S. W. 2d 1087, where a verdict for $1,500 for a 22-year-old son was sustained; and many other similar cases cited in the cases mentioned. The amount of the recovery is necessarily speculative. No one can know or testify what the value of the services of a minor child, less its necessary expense, will be. Generally, where the minor is of a tender age, the speculation must be limited to its minority. No legal obligation rests on a child to support a parent after majority, except as provided in § 7603, Pope's Digest. The proof shows these decedents to have been bright, industrious boys, all in high school and all hoped to go to college after high school. Necessarily they could not have been of great pecuniary benefit during minority, but they had reached an age and had expressed the hope and purpose, from which the jury was justified in inferring an intention, to be of financial assistance to their parents after majority. For this reason, we think the maximum verdict any jury would be justified in rendering would be $5,000 each for the benefit of the parent appellees in these cases. If, within 15 judicial days, they will enter remittiturs of $11,000 each, the judgments will be affirmed. Otherwise, as to these appellees, they will be reversed and remanded for a new trial. Costs of the appeal will be adjudged against appellant and the parent appellees one-half each.

HUMPHREYS and MEHAFFY, JJ., dissent from remittiturs ordered.