HEED, RECEIVER, *v.* GUMMERE, ADMINISTRATRIX.

[No. 23,677. Filed June 8, 1922.]

1. PLEADING.— *Demurrer to Complaint.*— *Scope and Effect.*—A demurrer to the complaint confesses for the purposes thereof that the facts are exactly as pleaded; and objections to the sufficiency of a complaint based upon facts not appearing therein must be set up by way of answer, and not by demurrer. p. 230.

2. PLEADING.— *Reply.*— *Special Denial.*— *Overruling Demurrer.*—Although it is not error to strike out or sustain a demurrer to a special denial pleaded with a general denial, the trial court is not bound to sustain a demurrer to a paragraph of reply, filed with a general denial, merely denying certain specific allegations of the answer to which it was addressed and reiterating material averments of the complaint inconsistent with that answer. p. 232.

3. DEATH.— *Wrongful Death.*— *Damages.*— In an action for wrongful death, where the evidence showed the deceased, earning from $100 to $120 per month, contributed not less than an average of $15 per week toward the support of his family during all of the nine or ten years of his married life, and that his wages as a miner averaged $5 per day, *held* that a verdict for $8,600 was not excessive. p. 233.

4. APPEAL.—*Review.*—*Weighing Evidence.*—The court on appeal does not weigh conflicting evidence. p. 233.

5. DEATH.— *Wrongful Death.*— *Damages.*— *Elements.*— *Income from Unlawful Occupation.*—In an action for wrongful death, damages cannot be based upon the value of decedent's life to his widow and children as determined by an unlawful income received from gambling and used for their support, in event that income was greater than his earning capacity in lawful occupations. p. 234.

6. TRIAL.—*Instructions.*—*Certainty.*—Instructions should be so drawn that they are not open to a construction that will be misleading. p. 234.

Heed, Rec., v. Gummere, Admx.—192 Ind. 227.

7. APPEAL.— Review.— Instructions.—Damages.—Elements.—Income from Unlawful Occupation.—In an action for wrongful death, an instruction that the jury might consider evidence that decedent gambled for hire for the purpose of showing pecuniary loss to his wife and children by his death, and that, if. decedent contributed to the support of his family from money obtained from gambling, that fact could be considered in determining the pecuniary loss to them, held reversible error, the damages awarded, $8,600, not being so small as to show that the error was harmless.   p. 234.

8. APPEAL.—Review.—Rulings of Trial Court.—Presumptions.— The court on appeal must presume in favor of the correctness of all rulings made by the trial court, except so far as error is affirmatively shown.   p. 235.

9. APPEAL.—Review.—Presumptions.—Terms of Shipping Contract.—Absence of Contract from Brief.—In an action for death resulting from injuries caused by the wreck of a freight car in which decedent was riding as the caretaker of livestock, where the shipping contract embraced eleven pages and the briefs only recited a single page of conditions enumerating certain things the shipper was forbidden to do, the court on appeal cannot presume that the contract contained no provisions under which conditions, such as that the caretaker must remain in the caboose while the train was in motion, might be waived by the conductor.   p. 235.

10. CARRIERS.—Carriage. of Live Stock.—Death of Caretaker.— Liability.—Operation of Train Over Road of Another.—Accounting to Owner of Road.—Where a receiver of a railroad was operating his own train, in charge of his own employes, and was transporting on such train a shipment of live stock, together with a person in charge thereof, under a contract to carry them as far as the line he was operating extended, he was not relieved from liability for the death of such caretaker from injuries received in a wreck caused by the negligent operation of the train by such servants by the mere fact that another company owned the roadbed or by the fact that he was bound by contract with such owner to account as agent for the earnings of its part of the road.   p. 235.

11. CARRIERS.—Carriage of Live Stock.—Injuries to Caretaker. —Violation of Shipping Contract.—Carrier's Liability.—A railroad company contracting to carry a caretaker with a shipment of live stock cannot escape liability for injuries resulting in his death caused by the derailment of the freight car in which he was riding by merely showing that the shipping contract required that he "remain in the caboose while the train was in motion" and releasing the carrier from liability for injuries

Heed, Rec., *v.* Gummere, Admx.—192 Ind. 227.

sustained while violating such regulation, where it does not appear that the caretaker's violation of the contract was the cause of his injury. p. 238.

12. CARRIERS.—*Carriage of Live Stock.—Injury to Caretaker.— Contributory Negligence.—Violation of Shipping Contract.—* Though the contract for a shipment of live stock provided that the caretaker should remain in the caboose while the train was in motion, and stipulated that his "failure to observe such regulation shall be *prima facie* evidence of negligence on his part in case of injury," his failure to ride in the caboose while the train was in motion was not *prima facie* evidence of contributory negligence, where the derailment of a freight car in which he was riding when injured was caused by a wreck to which his failure to obey such regulation could not have contributed, in the absence of evidence that his presence was not required in the car under a clause in the contract providing that he should care for the live stock therein, that the risk of injury by derailment thereof was greater than when riding in the caboose, or that there was any reason for a prudent and cautious person to anticipate injury from such cause or to choose one part of the train rather than another as being less subject to derailment; the caretaker, by leaving the caboose and riding in the freight car, not having assumed risks arising from extraordinary occurrences involving dangers not incident to the proper equipment and handling of such a train. p. 239.

13. CARRIERS.—*Carriage of Live Stock.—Injury to Caretaker.— Instructions.—Contributory Negligence.—Violation of Shipping Contract.—*In an action for death from injuries sustained in a wreck of freight car in which decedent was riding as caretaker of a shipment of live stock, an instruction that, if decedent was riding on the train under a written shipping contract, which required decedent to ride in the caboose while the train was in motion, the rights of the parties were to be determined under the terms of such contract, together with all the other evidence on such issue, *held* not erroneous; the contract not necessarily barring a recovery upon mere proof that decedent was not riding in the caboose. p. 241.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by Bonnie Gummere, administratrix of the estate of Howard Gummere, deceased, against Thomas D. Heed, receiver. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*John E. Iglehart* and *Hays & Hays,* for appellant.

*Jellison & Jellison* and *Lindley & Bedwell,* for appellee.

EWBANK, J.—The appellee recovered a judgment against the appellant for $8,600 for the death of her decedent, caused by the wreck of a freight car in which he was riding with a shipment of household goods, poultry and live stock, of which he was in charge as caretaker. The errors assigned and discussed are overruling the demurrer to the complaint and the demurrers to each of the second and third paragraphs of the reply, and overruling the motion for a new trial. As set out in appellant's brief the complaint charged that the deceased was a passenger for hire, as a drover and caretaker of live stock, on a train operated by appellant over a railroad possessed, controlled, managed and operated by the appellant, and that by reason of appellant's negligence in the operation of the train on which he was riding, and in failing to keep in repair the car in which he was riding, a wreck occurred, and the car was derailed, and the deceased was so injured that he died.

Appellant's objections to the sufficiency of the complaint seem to be based upon certain additional facts by reason of which, it is insisted, the deceased was not entitled to the rights of a passenger at the time of his injury. But a demurrer to the complaint confesses, for the purposes of the demurrer, that the facts are exactly as pleaded, and additional facts tending to show that the alleged cause of action does not exist, if any such facts there are, must be set up by way of answer. No error was committed in overruling the demurrer to the complaint.

The first paragraph of the answer was based upon an alleged operating contract set out therein, under which

the Chicago and Eastern Illinois Railroad Company, of which appellant was receiver, had undertaken the operation of the railroad owned by the Evansville and Indianapolis Railroad Company, on which the wreck occurred. One clause of this contract recited that the Evansville and Indianapolis Railroad Company did not "own any locomotives or cars, freight or passenger," and that the operation of its lines theretofore had been and then was being conducted by a third company which it was provided should be consolidated with the Chicago and Eastern Illinois Railroad Company, and by the use of the locomotives and cars of that company, and that "at midnight of June 30, 1911, the (C. & E. I. Railroad) company shall take possession of and thereafter, in accordance with the terms of this agreement, shall manage, use, maintain and operate all and singular the railroad properties of (the E. & I. Company and two others) respectively, and from and after midnight of June 30, 1911, all the officers, agents and employes of the (E. & I. Company and the two others) shall become the officers, agents and employes of the (C. & E. I. Railroad) company, and shall be subject to the by-laws, rules and regulations of the (latter) company." A second clause recited that from the same date the Chicago and Eastern Illinois Railroad Company "shall possess, manage, use, maintain and operate the railroad property of the (E. & I.) company as the agent, and for the use and benefit of (said) company, and shall keep separate accounts for the (said) company." Except the quoted fragments the contract is not otherwise set out in the briefs of counsel on either side, although it covers more than four type-written pages of the transcript.

The second paragraph of the answer was based upon an alleged shipping contract, which provided that a caretaker of certain live stock might ride on the freight train on which the stock was shipped. This contract,

as pleaded, covers eleven typewritten pages of the transcript.    Conditions numbered 14, 15 and 19 are set out in appellant's brief, with an averment that those conditions were violated by the deceased at the time of the injury.    But the contractual parts are not recited in the briefs.

A reply in three paragraphs was filed, of which the first paragraph was a denial, the second was a special denial of certain specific allegations of the first paragraph of the answer, and the third undertook to plead a waiver of the provisions of the contract set out in the second paragraph of the answer.

No error was committed in overruling a demurrer to the paragraph of reply that merely denied certain specific allegations of the answer to which it was 2. addressed, and reiterated certain material averments of the complaint inconsistent with what was alleged in the answer.    It is true that where such a special denial is pleaded with a paragraph of general denial, it is not error to strike out the special denial or to sustain a demurrer to it.    But the court is not bound to sustain a demurrer which admits the truth of a denial of material averments, even though it might do so without error.

Issues were joined upon a denial of the facts alleged in the complaint, a denial of the allegations in the first paragraph of answer that the train on which appellee's decedent was killed was being operated by servants of the Evansville and Indianapolis Railroad Company, and not by the defendant, a denial of the allegations of the second paragraph of answer that the injury was proximately caused by the decedent's failure to ride in the caboose, and of the fact that he rode in the freight car in violation of a condition in the shipping contract, and an implied denial of the allegation in the third para-

graph of answer that the appellant, by his conductor in charge of the train, waived the condition that the deceased should ride in the caboose.

There was evidence that at the time of the injury the deceased was employed in a lawful occupation; that he was a coal miner, and did odd jobs when the mines closed down; that he worked "the biggest part of the time" for the five years preceding his death, at mining when the mines were operating, and drew $50 to $60 each pay day, which was twice a month, for his work at mining, and that he contributed not less than an average of $15 per week toward the support of his family during the whole nine or ten years of his married life; and that his wages as a miner were $4 to $6 per day, and averaged $5 per day when he worked at mining.

3, 4. 

This is sufficient to uphold the verdict as against the specification in the motion for a new trial that the damages are excessive. There was evidence to the contrary, it is true, but this court does not weigh conflicting evidence.

There was evidence by witnesses for the defendant, and on cross-examination of plaintiff's witnesses (including the deceased, whose deposition was taken after the injury), to the effect that the deceased "just worked enough to make a living for three years prior to his injury," and that he spent much time visiting in Oklahoma and Michigan, and much time gambling in a saloon, where he made as much as $25 and $50 per week at gambling, "for a week or two before Christmas time."

There was also evidence that during the greater part of his married life appellee's decedent earned a living at mining coal and doing odd jobs, and that he was doing an "odd job" which was not unlawful at the time of

his injury; that at times he worked in restaurants, and that he also worked for a saloon keeper, for whom he played poker. The only evidence of what he made at gambling was given in answer to questions asked by the appellant, and the amount he was shown to have contributed to his family was less than what he could have earned by working in the mines half the time, but upon cross-examination of the decedent, when his deposition was taken, he stated that during the last two years before the injury he did not work at mining, but was gambling, except when he was away.

As applied to this evidence the court gave an instruction to the jury (among others) that (No. 30) "the fact, if it be a fact, that plaintiff's decedent gambled for hire, should not be considered by you in determining whether or not plaintiff has a right to recover. *Such evidence was admitted solely for the purpose of showing the pecuniary loss* to decedent's wife and children by his death, and *if you find that plaintiff's decedent contributed to the support of his wife and children from money obtained from gambling, you have a right to consider that fact for that purpose, and no other.*" This instruction is not understood in the same sense by all the judges of this court. A majority of the court understand the words which we have italicized to mean that damages may be awarded based upon the value of decedent's life to his widow and children, as determined by an unlawful income which he had received from gambling and used for their support, in case that income was greater than his earning capacity in lawful occupations. As so understood it is erroneous. The jury could not assume that appellee's decedent would have continued successfully to violate the law, and from the proceeds of his unlawful acts to contribute more liberally to the support of his family than he might have done from lawful earnings, and acts done in viola-

tion of law could not afford the basis for a recovery in an action at law. A recovery of damages cannot be based upon proof that one under whom the plaintiff claims has violated the law, or will continue to violate it, or that he would have continued to do so if he had not been prevented by the act of defendant complained of.

The writer of this opinion would not so understand it, as used in connection with the other instructions given. But other members of the court so understand it, and it is probable that some or all of the jurors were misled by it. An instruction should be so drawn that it is not open to a construction that will be misleading. The damages awarded are not so small as to show that the error in giving this instruction was harmless, and for error in giving it the judgment must be reversed.

Without knowing more of the contents of the shipping contract than the briefs set out we cannot undertake to say that it could not contain such provisions as 8, 9. that some of its conditions might be waived by the conductor of the train on which the deceased was riding. We must presume in favor of the correctness of all rulings made by the trial court except so far as error is affirmatively shown. And we cannot presume that an eleven page contract did not contain anything justifying an instruction given, when the briefs do not set out any provisions of the principal contract, but only recite a single page of conditions enumerating what one of the parties was forbidden to do.

It appears from the evidence that the Chicago and Eastern Illinois Railroad Company took over the operation of the railroad on which appellee's decedent 10. was riding, when he was injured, under a contract which contained certain provisions, as set out above, and that appellant was appointed as receiver for the Chicago and Eastern Illinois Railroad, and con-

tinued to operate it until after the date of the injury. Appellant asked instructions to the effect that if he was operating the railroad where appellee's decedent was injured for and on behalf of the Evansville and Indianapolis Railroad Company, under the contract referred to, the plaintiff could not recover, and if the receiver was agent for the Evansville and Indianapolis Railroad Company, and as such agent hired the servants who operated the train on which appellee's decedent was injured, and his injury was caused by the negligence of those servants, appellee could not recover. However, in addition to the recitals of the contract that the Evansville and Indianapolis Railroad Company had no locomotives or cars and had not had any, and that all of its servants were to be the servants of the Chicago and Eastern Illinois Railroad Company, two witnesses testified that appellant was operating the railroad under said contract. The written contract of shipment as read in evidence provided that the receiver should transport the car of live stock and person in charge from Shelburn to Worthington, if on the line of railroad operated by the receiver; other witnesses testified that the wreck in which appellee's decedent was killed was on the Evansville and Indianapolis Division of the Chicago and Eastern Illinois Railroad, and that the train was being operated by appellant's predecessor as receiver of the Chicago and Eastern Illinois Railroad, and that employes of the receiver were being carried on the train on passes issued by said receiver while going to work on some bridges on that division; the decedent testified in his deposition that the line of railroad on which he was injured was owned by the Chicago and Eastern Illinois Railroad, of which appellant's predecessor was receiver; there was no evidence that the company which owned the line of road where the wreck occurred ever became the owner of any locomotives or cars or otherwise ac-

quired any, nor that there was any change between June 20, 1911, and the date of the injury in the relation of the agents and employes of that company to the Chicago and Eastern Illinois Railroad Company, whose agents and employes they were to become on that date under the provisions of the contract. But the uncontradicted evidence showed that appellant's predecessor was appointed as receiver of the Chicago and Eastern Illinois Railroad Company's property and assets, "owned and leased or operated by said railroad company," and was directed to "run, manage, maintain and operate the said railroads * * * including such railroads and property as the said railroad company holds, controls or operates under lease or otherwise." And there was no evidence that he ceased to operate the division on which appellee's decedent was injured until some time after the date of the injury, when he surrendered it to a receiver appointed for it. And even when testifying that the train on which the decedent was killed was not being operated on any line of railroad owned by the Chicago and Eastern Illinois Railroad Company, the receiver did not deny that the train, itself, belonged to that company.

As applied to such evidence the requested instructions would have been misleading. If the receiver was operating a train of his own locomotives and cars, in charge of those who had "become" or otherwise were his own servants and employes, carrying live stock and a person in charge thereof that he had contracted to carry as far as the line extended which he was engaged in operating, the mere fact that another company owned the road bed, and that a contract with such owner bound him to account, "as agent," for what was earned by the operation of its part of the railroad, would not relieve him from liability for injuries caused by the negligence of such servants and employes in the operation of the train. A receiver of a railroad company who ran his

own trains over a railroad in charge of his own servants, carrying passengers whom he had contracted to carry, would be liable for injuries inflicted on a passenger by a wreck caused by the negligence of his servants who prepared the cars for use, or who operated the train, and could not escape liability by a mere undertaking to account, as agent, for his earnings.

The giving of certain instructions and the refusal to give certain others is complained of because the evidence showed that the shipping contract signed by appellee's decedent as agent for the shipper was conditioned that the person accompanying the live stock should ride in the caboose, and that decedent was in the freight car with the live stock when it was wrecked between stations. Appellant relies upon provisions of the shipping contract that the person in charge of the live stock "shall remain in the caboose while the train is in motion," and a stipulation releasing the receiver from liability for injuries sustained, "if injured while violating said terms or regulations." But it is not the law that a railroad company which undertakes to carry a passenger on a freight train can escape liability in case it negligently permits the train to be wrecked, and thereby injures him, by merely showing that it contracted with him that he should ride in one place and he rode in another place, where it is not shown that his violation of the contract had anything to do with causing his injury.

If appellee's decedent had attempted to ride, clinging to the side of the car, and had been struck by a coal chute built close to the track, or if he had ridden on the engine near an open window of the cab, and had fallen out of the window, or if he had been thrown down and injured in switching the car, there might be reason for urging that his failure to ride in the caboose contributed to cause his injury. But the undisputed evi-

dence in the case at bar is that the car with the live stock remained in Terre Haute for twenty-four hours, and during that time was detached from all other cars and trains, and was moved to several different places, some of them a mile apart; it was then started toward Worthington in a train, and from Cory to Saline City the deceased rode in the caboose and talked to the conductor about certain provisions in the pass on which he was riding; that at Saline City he went forward and rode in the car with the live stock, of which fact the conductor had knowledge; and that at Eel River station, or Macy's switch, two or three miles south of Saline City, the freight car in which he was riding with the live stock left the track and turned over, down an embankment, and other cars piled upon it and crushed it, and thereby caused his death. Three or four cars were wrecked, and there were from eight to fourteen cars (as stated by different witnesses) between the car in which he was riding and the caboose, and the caboose was not wrecked. A passenger and some of the trainmen who were riding in it were not injured. Wheels from under one end of the car in which he was riding were found at some distance back of where the wreck occurred, and the undisputed evidence showed that the car was dragged along on the ties before it tipped over. That the derailment was caused by the negligence of those who were operating the railroad, and that nothing which appellee's decedent did or omitted to do contributed to cause the wreck were shown without dispute.

A contract for the shipment of live stock which provides that the person accompanying it shall be carried free, that the live stock shall be in the sole charge 12. of such person, and that he shall feed and water the stock and provide it with bedding, but that he "shall remain in the caboose while the train is in motion," and that his "failure to observe such regula-

tion   *   *   *   shall be *prima facie* evidence of negligence on his part in case of injury," does not make his failure to ride in the caboose *prima facie* evidence of contributory negligence, where the injury was caused by a wreck of the train to which his failure to obey such regulations could not have contributed.   If he was being carried under the terms of the written contract, as alleged in the answer, appellee's decedent assumed all risks reasonably incident to such carriage, when he left the caboose and rode in the freight car, and was *prima facie* chargeable with contributory negligence so far as the place where he was riding contributed to cause his injury.   But he did not thereby assume risks arising from extraordinary occurrences, involving dangers not incident to the proper equipment and handling of that kind of a train, such as negligently overturning the car and crushing it under other cars that were also negligently derailed.   *Kloppenburg* v. *Minneapolis, etc., R. Co.* (1913), 123 Minn. 173, 143 N. W. 322.

There is nothing in the evidence to show, and we cannot know as matter of law, that the presence of the caretaker in the car was not required at the time of the injury, under the clause in the contract requiring him to care for the live stock.   *Pittsburgh, etc., R. Co.* v. *Brown* (1912), 178 Ind. 11, 20, 21, 97 N. E. 145, 98 N. E. 625.   And there is nothing in the evidence to show that the risk of injury by derailment is greater when riding in one part of such a train than when riding in another part, or that there was any reason for a prudent and cautious person to anticipate injury from that cause when riding in any part of the train, or to choose one part of the train rather than another, as being less subject to derailment.   The appellant was bound by law, as well as by the terms of the alleged contract, to transport the car in which the live stock was carried, without derailing or otherwise wrecking it, and,

except so far as the act of riding therein constituted contributory negligence, could not enforce against a shipper or other passenger a contract that appellant should not be liable in damages for negligence of the carrier or his employes by which the car should be derailed. *Lake Shore, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 344, 77 N. E. 599, 5 L. R. A. (N. S.) 425; *Pittsburgh, etc., R. Co.* v. *Brown, supra.*

In the absence of any evidence tending to prove that riding in the freight car contributed to cause the injury and death of appellee's decedent, it was not error for the court to refuse instructions drawn upon the theory that there could be no recovery because he was not riding in the caboose.

Giving instruction No. 6, to the effect that if appellee's decedent was riding on the train under the alleged written contract as admitted by one paragraph of the reply, the rights of the parties were to be determined under and by virtue of the terms of the contract, "together with all the other evidence, if any, given in the cause on the issue tendered by said paragraph of reply," was not error. The contract did not necessarily bar a recovery upon mere proof that the deceased was not riding in the caboose.

In view of what has been said to the effect that riding in the stock car, even if it amounted to negligence, was not such negligence as contributed to the derailment of the car and resulting injury, it is not necessary for us to decide whether or not the stipulation in the shipping contract that the caretaker should ride in the caboose was one which the conductor and other trainmen had power to waive, nor whether the facts proved were sufficient to establish a waiver. As to those questions we express no opinion.

Certain instructions are complained of as misleading

in their application to the facts of this case, although they correctly declare abstract principles of law. But we do not think they afford cause for reversing the judgment.

Instruction No. 17, given by the court, was as follows: "I instruct you that any provisions of the shipper's contract introduced in evidence, which absolves or releases the defendant from any injuries which might be sustained by the shipper or drover in charge of the goods and stock being shipped under said contract, do not release the defendant for injuries, inflicted upon said drover by the sole negligence of the defendant, if any."

Appellant has not challenged this instruction nor attempted to point out that it is erroneous in any particular. And we think that when the instructions complained of as being in conflict with each other are read in connection with this one, and applied to the evidence, they are sufficiently harmonized not to be cause for reversing the judgment.

For error in giving the instruction No. 30 the judgment is reversed, with directions to grant a new trial.

Townsend, J., concurs in the conclusion.